# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON A. SUNIGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-3444-SSA-CV-S-WAK |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Claimant Sharon Suniga seeks judicial review,[1] pursuant to 42 U.S.C. § 1383(c)(3), of a final administrative decision denying Supplemental Security Income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* She asserts the decision of the Administrative Law Judge (ALJ) that she has the residual functional capacity to perform work in the economy is not supported by the record. The parties' briefs are fully submitted.

### Standard of Review

"Title II of the Social Security Act provides for the payment of insurance benefits to persons who suffer from a physical or mental disability, and Title XVI provides for the payment of disability benefits to indigent persons. The Act further provides that 'an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' 42 U.S.C. § 423(d)(2)(A) (2003)." Lewis v. Barnhart, 353 F.3d 642, 645 (8th Cir. 2003).

On judicial review, the court must sustain the Commissioner's decision if the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Young v. Apfel,

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

221 F.3d 1065, 1068 (8th Cir. 2000). The court may not, however, "rubber stamp" the Commissioner's decision, but must examine both the evidence that supports and detracts from the administrative determination. Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

Substantial evidence is "relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Young v. Apfel, 221 F.3d at 1068. It is more than a scintilla of evidence, McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983), but is less than a preponderance of the evidence. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). The possibility of drawing inconsistent conclusions from the evidence does not prevent the Commissioner's finding from being supported by substantial evidence. Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). See Roth v. Shalala, 45 F.3d at 282. To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." McMillian, 697 F.2d at 220.

If the claimant establishes the impairment is sufficiently severe to prevent return to a former occupation, the burden shifts to the Commissioner to produce evidence the claimant can perform other substantial gainful employment. Buck v. Bowen, 885 F.2d 451, 454 (8th Cir. 1989). The Commissioner need not find a specific job opening for the claimant, but must demonstrate that substantial gainful activity is realistically within the capabilities of the claimant. McMillian, 697 F.2d at 221.

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments. McMillian, 697 F.2d at 221.

## Discussion

Plaintiff Sharon Suniga was born in 1957 and has obtained her Certificate of General Education Development (GED). She has limited experience as a telemarketer and fast food worker, and has held temporary positions such as in housekeeping. She asserts she is disabled due to antisocial disorder, borderline personality disorder, and a herniated L5-S1 disc to the right.

The ALJ reviewed the available evidence and concluded Suniga had degenerative disc disease of the lumbar spine which was severe within the meaning of the Social Security Act. He did not find her mental impairments to be severe, and ultimately found she was capable of performing her past sedentary work as a telemarketer. In reaching this decision, the ALJ discounted the opinions set forth in Medical Source Statements submitted by Syed Imam, M.D., (Mental Impairments) and Gregory Zolkowski, M.D., (Physical Impairments).

Dr. Zolkowski completed the form, indicating that Suniga could only stand and/or walk continuously for ten minutes at a time, could only sit for ten minutes at a time during a regular work day, and could only sit a total of four hours in an eight-hour work day. He stated that rest, not necessarily in a recumbent position, would be helpful or necessary for 10 - 15 minutes every hour. Based upon those statements, plaintiff would not be capable of working.

Likewise, Dr. Imam assessed plaintiff as having mild limitations in some psychological categories, but moderate limitations in others. Particularly, he indicated she was moderately limited in her ability to understand, remember and carry out detailed instructions; to accept instructions and/or criticism from supervisors; to get along with coworkers without distracting them or exhibiting behavioral extremes; to respond to workplace changes; to notice and take precautions with regard to normal hazards; and to set realistic goals or make independent plans.

The ALJ considered the record as a whole and found inconsistencies between the physicians' opinions and their treatment records. Further, he found Suniga's condition could reasonably be expected to produce the alleged symptoms, but that her statements regarding the intensity, duration and limiting effects were not entirely credible.

The medical records have numerous references to Suniga's noncompliance with treatment, her apparent narcotic seeking behavior, and instances where she left without treatment when she learned she would not receive the medication she sought. On at least two separate

occasions in March and April 2004, the records suggest she was engaging in at least moderately strenuous activity, because she sought emergency room care for her back after she hurt it while moving and after moving furniture.

The ALJ noted plaintiff lived with her disabled mother, took care of the household chores and laundry, and was capable of caring for her own personal needs. Although plaintiff's back impairment was documented by objective testing, the ALJ concluded there was nothing in the medical treatment records which would support the limitations set forth in the Medical Source Statement submitted by Dr. Zolkowski.

Dr. Zolkowski did not document any restrictions in her activities or note that she complained she was unable to engage in normal daily activities. He prescribed pain medications and referred her to other doctors for further evaluation, but did not recommend or prescribe more aggressive treatment. Additionally, he did not document any instructions to rest, lie down, or use ice or heating packs. His treatment notes suggest he saw her generally for chronic low back pain and not for documented acute or particularly painful episodes of back pain.

The ALJ noted the limited mental health treatment plaintiff received, and determined that Dr. Imam's opinion was not supported by the treatment records. Dr. Imam had not personally examined plaintiff, and under these circumstances, it was not error for the ALJ to discount the opinion.

The ALJ considered numerous factors when assessing plaintiff's credibility. There were notations in the records indicating she did not always take her prescribed medications, did not take them as directed, left without treatment or left AMA when she was advised she would not get certain medications or privileges, and did not obtain mental health treatment and/or counseling on a regular basis. This kind of activity is not suggestive of someone who is in serious pain or who is disabled because of pain or mental impairments.

Further, Suniga had a poor work history with low earnings and had a history of applying for benefits, suggesting she had low motivation to work. She had received and not paid back a

4

substantial overpayment of previous benefits, and had engaged in other behavior that called into question her credibility or honesty.[2]

"Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Subjective complaints of physical and/or mental health problems may be discounted when they are inconsistent with medical reports, daily activities or other such evidence. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003). Nevertheless, the ALJ's decision to discredit such complaints must be supported by substantial evidence based upon the record as a whole. Dixon v. Barnhart, 353 F.3d at 605; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (deference to ALJ's credibility determination appropriate if decision supported by good reasons and substantial evidence).

The record in this case contains ample and substantial evidence for finding claimant's allegations of disabling pain to be less than totally credible. Likewise, there are substantial grounds in the record for discounting the Medical Source Statements that were submitted.

Nevertheless, the record clearly indicates Suniga has physical impairments which limit her activities and she has mental health issues which may require further evaluation. The ALJ gave little weight to the opinions of the physicians without obtaining a medical consultation or pointing to specific evidence in the record which supports his determination of plaintiff's residual functional capacity. For example, the court did not find evidence which would show how the ALJ determined how long plaintiff could sit and/or stand in an eight-hour workday. In essence, he made a residual functional capacity decision without having (1) a medical opinion which he found credible or (2) specific medical evidence regarding the extent of her limitations.

The ALJ's determination of residual functional capacity must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart,

---

[2]She obtained a very limited amount of mental health counseling in 2005 because it was required by her parole officer after she tested positive for smoking marijuana. The records suggest she was resistant to treatment and did not believe she needed it.

There was also a notation that she believed a drug had caused her to steal, but then she later requested a prescription for it. Prior to her application, she was convicted of shoplifting and served a period of incarceration.

At the hearing, Suniga admitted to a history of abuse of marijuana. Her records suggest she was untruthful when she denied a history of abuse of illegal drugs other than marijuana.

5

353 F.3d 642, 646 (8th Cir. 2003). It is a medical consideration that, in essence, defines "what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545." Pearsall v. Massanari, 274 F.3d 1211, 1214 (8th Cir. 2001). When pain is involved, the issue is not whether plaintiff was experiencing pain during the coverage period, but how severe the pain was and whether it was disabling. Dolph v. Barnhart, 308 F.3d 876, 880 (8th Cir. 2002); Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. (2001); Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991). Thus, the ALJ must set forth the limitations based upon the medical evidence and then determine how those limitations affect his or her RFC. Lewis v. Barnhart, 353 F.3d at 646.

If the ALJ is not going to give substantial weight to the opinion of the physicians, he should at the very least have some medical basis in the record to support his determination of what plaintiff can do despite her limitations. Thus, this appears to be a case where a medical consultation or some other means of better developing the record is appropriate.

"There is no bright line test for determining when the [Commisioner] has . . . failed to develop the record. The determination in each case must be made on a case by case basis." Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

Clearly, there is substantial evidence in the record as a whole to question the credibility of the opinions set forth in the Medical Source Statements and to discount plaintiff's testimony and allegations. Nevertheless, claimant is correct that the record contains no contradictory medical opinion or substantial contradictory medical evidence that claimant is capable of doing more. Accordingly, the court finds this case should be remanded to the Commissioner for further consideration and/or development of the record with regard to plaintiff's limitations.

In light of the foregoing, it is

ORDERED that this case is reversed and remanded to the Commissioner, pursuant to Sentence 4, 42 U.S.C. § 405(g), for further consideration and/or development of the record.

Dated this 10th day of October, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge